IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| PROSPECT SQUARE 07 A, LLC, | ) | Case No. 14-10896-EEB |
| Debtor. | ) | Chapter 11 |
| | ) | |
| IN RE: | ) | |
| PROSPECT SQUARE 07 B, LLC, | ) | Case No. 14-10897-EEB |
| Debtor. | ) | Chapter 11 |
| | ) | |
| IN RE: | ) | |
| PROSPECT SQUARE 07 C, LLC, | ) | Case No. 14-10899-EEB |
| Debtor. | ) | Chapter 11 |
| | ) | |
| IN RE: | ) | |
| PROSPECT SQUARE 07 D, LLC, | ) | Case No. 14-10900-EEB |
| Debtor. | ) | Chapter 11 |
| | ) | |
| IN RE: | ) | |
| PROSPECT SQUARE 07 E, LLC, | ) | Case No. 14-10902-EEB |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | Jointly Administered |
| | ) | Under Case No. 14-10896-EEB |

**MOTION TO APPROVE SETTLEMENT AGREEMENT BY AND BETWEEN
DEBTORS AND MSCI 2007-IQ16 RETAIL 9654, LLC**

Prospect Square 07 A, LLC, Prospect Square 07 B, LLC, Prospect Square 07 C, LLC,
Prospect Square 07 D, LLC, and Prospect Square 07 E, LLC (collectively, the "Debtors"), by and
through their attorneys, Kutner Brinen Garber, P.C., move the Court pursuant to Bankruptcy Rule
9019(a) for approval of a settlement between the Debtors and MSCI 2007-IQ16 RETAIL 9654, LLC
which is incorporated into the attached DPO Letter Agreement ("Settlement Agreement") based on
the following:

1.     The Debtors filed separate voluntary petitions for relief under Chapter 11 of the
Bankruptcy Code on January 29, 2014.

2.     The Debtors' cases are being jointly administered under the "lead case," 14-10896-
EEB.  The Debtors remain Debtors-in-Possession.

3.     The Debtors are Ohio limited liability companies who own a retail shopping center
located on a parcel of property at 9690 Colerain Ave., Cincinnati, Ohio ("Property").

4.     MSCI 2007-IQ 16 Retail 9654, LLC ("MSCI") is a secured creditor in this bankruptcy case holding a mortgage encumbering the Debtors' Property. The original note holder related to the MSCI claim is the Royal Bank of Canada ("Bank" or "RBC"). On or about October 10, 2007 the Debtors entered into a lending arrangement with the Bank. The loan extended by the Bank is evidenced by a Promissory Note in the original amount of $12,900,000 ("Note") which is secured by the Property by virtue of a Mortgage, Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents ("Mortgage").

5.     In late 2007 RBC assigned the Note, Mortgage, and certain related loan documents to LaSalle Bank N.A., as trustee for the holders of Morgan Stanley Capital I, Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16, without recourse, representation, or warranty.

6.     On or about October 24, 2011 Bank of America, N.A. as successor to LaSalle Bank N.A. assigned the Note and certain loan documents to U.S. Bank N.A. as trustee for the holders of Morgan Stanley Capital I, Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 ("U.S. Bank"), without recourse, representation, or warranty.

7.     On or about February 20, 2013 U.S. Bank as trustee assigned the Note and certain loan documents to MSCI.

8.     On March 12, 2014, MSCI filed Proof of Claim No. 1-1 asserting a secured claim in the amount of $18,768,462.69.

9.     The Debtors and MSCI are parties to several contested matters and adversary proceedings related to this bankruptcy case, including: (1) MSCI's objection to the Debtors' counsel's motion to approve retainer and first application for compensation (Docket Nos. 40 and 123); (2) MSCI's prior objection to the Debtors' original Disclosure Statement (Docket No. 117); (3) MSCI's prior objections to the Debtors' motions for the use of cash collateral (Docket Nos. 39 and 70); (4) *Debtors v. MSCI*, Adversary Proceeding No. 14-01211-EEB (objection to MSCI's Proof of Claim No. 1-1 and for declaratory relief); and (5) *MSCI v. Debtors*, Adversary Proceeding No. 14-01182-EEB (complaint to determine validity, extend and priority of lien of MSCI in retainer).

10.    In order to resolve the pending contested matters and adversary proceedings, the parties have entered into a DPO Letter Agreement, a copy of which is attached hereto and incorporated herein as Exhibit 1 (the "Settlement Agreement"). The Settlement Agreement was entered into on September 30, 2014, among the Debtors and MSCI.

11.     The Debtors have also entered into an Agreement for Purchase and Sale of Real Property dated September 30, 2014, for the sale of the Property for a purchase price of $16,150,000. A separate motion to approve the sale will be filed.

12.     Subject to Court approval, the Settlement Agreement provides for the following[1]:

A.  The Debtors shall file a motion to approve a sale of the Property subject to 11 U.S.C. § 363 free and clear of all liens, claims, encumbrances and interests, with the sale proceeds distributed (1) first to all closing costs; (2) second to any pre-Petition and post-Petition real property taxes due and owing on the Property, and (3) third, to MSCI in the Discounted Payoff amount set forth in the Settlement Agreement. The remaining net sale proceeds shall be disbursed by the title/escrow agent to the Debtors.

B.  MSCI has agreed to a "Discounted Payoff" as is more fully set forth in the Settlement Agreement and summarized as follows: (a) all unpaid principal in the amount of $12,418,135.53; (b) all unpaid interest at the non-default Note Rate through the date of payoff; plus (c) reimbursement of all tax advances and out of pocket fees, costs, or expenses incurred by Lender through and including the date of the payoff, which shall include a liquidation fee equal to 1% of the principal balance of the loan (the "Discounted Payoff").

C.  Provided no termination event has occurred under the Settlement Agreement, MSCI shall release and waive any right to assert or claim additional amounts owed by the Debtors over and above the Discounted Payoff, including a release and waiver of any right to assert or claim additional amounts owed based on any "Yield Maintenance Provision," any prepayment premium or penalty thereon, or any "Default Rate Interest."

D.  The Settlement Agreement provides for several forbearance provisions. Pending approval of the Settlement Agreement and the closing on the sale of the Property, MSCI agrees not to seek relief from stay, to hold the various contested matters and adversary proceedings in abeyance, to not take any steps to obtain a judgment against the Debtors or the guarantor, and will not conduct a foreclosure sale of the Property.

---

[1] This is only a summary of the Settlement Agreement. To the extent that there are any inconsistencies between the

E.  During the forbearance period, the Debtors shall pay to MSCI the following: (i) $29,002 on account of accruing real estate taxes; and (ii) $1,426 on account of insurance premiums as adequate protection payments in the Bankruptcy Case

F.  Upon approval of the Settlement Agreement and the closing on the sale of the Property in compliance with the Settlement Agreement, the Debtors and MSCI shall dismiss the two pending adversary proceedings and the case entitled *MSCI 2007-IQ16 Retail 9654, LLC v. Prospect Square 07, LLC, et al.*, Case No. A1305225 pending in the Hamilton County Court of Common Pleas; and Gary Dragul and MSCI shall dismiss the case entitled *MSCI 2007-IQ16 Retail 9654, LLC v. Gary J. Dragul*, Case No. 1:14-cv-00287-TSB pending in the United States District Court For The Southern District of Ohio Western Division.

G.  The Settlement Agreement provides for mutual releases.

13.     Because the sale of the Property is contingent upon a closing by October 8, 2014, the Debtors have filed a separate motion to shorten the notice/objection period from 21 days to 10 days. The Debtors are working with the Purchaser to arrange for a mutually acceptable closing date after Court approval of this Motion and the Settlement Motion.   MSCI consents to the Debtors' requested shortened notice.

14.     The parties believe that the Settlement Agreement represents a global and reasonable resolution of the issues that are involved in both the adversary proceedings and contested matters. The Settlement Agreement will save all parties the cost and expense of litigating the adversary proceedings, contested matters and plan confirmation.   The Settlement Agreement will also result in a work-out between the parties and a consensual sale of the Property, without the need for further expense in confirming a plan of reorganization.   Therefore, in the interest of saving fees and costs of litigation, the Settlement Agreement is appropriate.

15.     Other than the secured claims of MSCI and the Hamilton County Treasurer, the Debtors have approximately fourteen unsecured creditors with claims totaling approximately $91,427.99 (see Amended Schedule F).   The Debtors have the ability to pay the remaining unsecured debts outside of bankruptcy.

---

summary and the Agreement, the terms and conditions of the Agreement control.

16.     The law generally favors compromises and settlement of disputes among parties. *See Stanspec Corp. v. Jelco*, 464 F.2d 1184, 1187 (10th Cir. 1972). To evaluate a settlement proposal, a court must "determine whether the settlement is fair and equitable and in the best interests of the estate." *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 976 (D. Colo. 1989). In making this determination, the Court should consider (1) the probable success of the litigation on the merits; (2) any potential difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views. *See In re Kopexa Realty Venture Co.*, 213 B.R. 100, 1022 (B.A.P. 10th Cir. 1997); *Official Comm. Of Unsecured Creditors of Western Pac. Airlines v. Western Pac. Airlines (In re Western Pac. Airlines)*, 219 B.R. 575, 579 (D. Colo. 1998).

17.     In evaluating fairness of a settlement and compromise under Rule 9019, the Court is not obligated to conduct an evidentiary hearing. *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 586 (7th Cir. 1994); see also, *In re Armstrong*, 2002 Bankr. LEXIS 301 (B.A.P. 10th Cir. Mar. 28, 2002) ("in approving a settlement, the bankruptcy court is not required to conduct a 'mini-trial on the merits'").

18.     The Settlement Agreement represents an exercise of the Debtors' best business judgment with respect to the resolution of the issues in the adversary proceedings and contested matters.

WHEREFORE, the Debtors pray that the Court make and enter an Order approving the Settlement Agreement attached hereto as Exhibit 1, and for such further and additional relief as to the Court may appear proper.

Dated: October 1, 2014

Respectfully submitted,

By: _____

Lee M. Kutner (#10966)
Leigh A. Flanagan (#34916)
KUTNER BRINEN GARBER, P.C.
1660 Lincoln Street
Suite 1850
Denver, CO 80264
Telephone:  (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: lmk@kutnerlaw.com
E-Mail: laf@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned further certifies that on October 1, 2014, I served by prepaid first class mail a copy of the foregoing **MOTION TO APPROVE SETTLEMENT AGREEMENT BY AND BETWEEN DEBTORS AND MSCI 2007-IQ16 RETAIL 9654, LLC AND NOTICE OF DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT BY AND BETWEEN DEBTORS AND MSCI 2007 IQ16 RETAIL 9654, LLC** in accordance with FED. R. BANKR. P. 2002 and 11 U.S.C. § 342(c) on parties in interest contained on the attached list, which is a copy of the court's Creditor Address Mailing Matrix for this case, obtained from PACER on October 1, 2014, and, if applicable, other interested parties the movant mailed notice at the following addresses:


Vicky Martina

Label Matrix for local noticing
1082-1
Case 14-10896-EEB
District of Colorado
Denver
Wed Oct  1 16:17:26 MDT 2014

Brownstein Hyatt Farber & Schreck
410 17th Street
Suite 2200
Denver, CO 80202-4432

Chamberlain Contract Sweeping
4320 Mt. Carmel Road
Cincinnati, OH 45244-1642

Colorado Department Of Revenue
1375 Sherman St.
Room 504
Attention Bankruptcy Unit
Denver CO 80261-3000

Duke Energy
P.O. Box 1327
Charlotte, NC 28201-1327

Leigh Flanagan
1660 Lincoln St.
Ste. 1850
Denver, Co 80264-9911

Jenny M.F. Fujii
1660 Lincoln St.
Ste. 1850
Denver, CO 80264-9911

GDA Management Services, LLC
5690 DTC Boulevard
Suite 515
Greenwood Village, CO 80111-3207

GDA Real Estate Services, LLC
5690 DTC Boulevard
Suite 515
Greenwood Village, CO 80111-3207

Gary Dragul
c/o Robert Graham
360 S. Garfield St.
6th Floor
Denver, CO 80209-3186

Goering & Goering, LLC
220 West 3rd Street
Cincinnati, OH 45202-3407

Robert Graham
360 South Garfield Street
6th Floor
Denver, CO 80209-3186

(p)GREATER CINCINNATI WATER WORKS
4747 SPRING GROVE AVE
ATTN BANKRUPTCY DESK
CINCINNATI OH 45232-1986

H.C. Nutting Company
P.O. Box 843358
Kansas City, MO 64184-3358

Hamilton County Treasurer
ATTN: Robert A. Goering
P.O. Box 740857
Cincinnati, OH 45274-0857

IRS
PO Box 7346
Philadelphia PA 19101-7346

Lee M. Kutner
1660 Lincoln St.
Ste. 1850
Denver, CO 80264-9911

LNR Property, LLC
1601 Washington Avenue
Suite 700
Miami Beach, FL 33139-3165

MSCI 2007-IQ16 Rental 9654, LLC
c/o James T. Markus
Markus Williams Young & Zimmermann LLC
1700 Lincoln Street, Suite 4550
Denver, CO 80203-4500

MSCI 2007-IQ16 Retail 9654, LLC
c/o LNR Property, LLC
1601 Washington Avenue
Suite 700
Miami Beach, FL 33139-3165

MSCI 2007-IQ16 Retail 9654, LLC
c/o Porter Wright Morris & Arthur, LLP
41 South High Street, Suite 3100
Columbus, OH 43215-6163

James T. Markus
1700 Lincoln St.
Ste. 4550
Denver, CO 80203-4500

Jeffery O. McAnallen
1700 Lincoln St.
Suite 4550
Denver, CO 80203-4500

Daniel J. Morse
308 W. 21st St.
Ste. 203
Cheyenne, WY 82001-3669

Prospect Square 07 A, LLC, an Ohio limited l
5690 DTC Boulevard
Suite 515
Greenwood Village, CO 80111-3207

Reinhart & Associates, LLC
517 Broadway
Suite 204
Saratoga Springs, NY 12866-2237

Robbins, Kelly, Patterson & Tucker
7 West 7th Street
Suite 1400
Cincinnati, OH 45202-2499

Schumacher Dugan Construction, LLC
6355 Centre Park Drive
West Chester, OH 45069-4871

Securities and Exchange Commission
Midwest Regional Office
175 W. Jackson Blvd.
Ste. 900
Chicago IL 60604-2815

Security & Exchange Commission
Central Regional Office
1801 California St.
Ste. 1500
Denver CO 80202-2656

The Conundrum Group, LLP
P.O. Box 848
Salida, CO 81201-0848

Trust Capital Group
749 Bayonne Street
Suite 100
El Segundo, CA 90245-2104

US Trustee
999 18th St.
Ste. 1551
Denver, CO 80202-2415

Wells Fargo Commercial Mortgage
P.O. Box 60253
Charlotte, NC 28260-0253

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Greater Cincinnati - Water Works
Attn: Bankruptcy Desk
4747 Spring Grove Ave.
Cincinnati, OH 45232-1986

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Gary Dragul

(u)MSCI 2007-IQ16 Retail 9654, LLC

(u)Prospect Square 07 B, LLC

(u)Prospect Square 07 C, LLC

(u)Prospect Square 07 D, LLC

(u)Prospect Square 07 E, LLC

(u)Reinhart & Associates, LLC

(u)The Conundrum Group

End of Label Matrix
Mailable recipients     33
Bypassed recipients      8
Total                   41

**MSCI 2007-IQ16 Retail 9654, LLC**
**c/o LNR Partners, LLC**
**1601 Washington Avenue, Suite 700**
**Miami Beach, Florida  33139**

**DPO LETTER AGREEMENT**

Executed as of September 30, 2014 (the "**Execution Date**")
but effective as of September 25, 2014 (the "**Effective Date**")

**VIA EMAIL AND FEDEX**

*Prospect Square 07A, LLC*
*Prospect Square 07B, LLC*
*Prospect Square 07C, LLC*
*Prospect Square 07D, LLC*
*Prospect Square 07E, LLC*
c/o Lee Kutner
Kutner Brinen Garber P.C.
1660 Lincoln Street, Suite 1850
Denver, CO  80264

Re:   **Loan to** *Prospect Square 07A, LLC, Prospect Square 07B, LLC, Prospect Square 07C, LLC,*
        *Prospect Square 07D, LLC, Prospect Square 07E, LLC* ("**Borrowers**")
        **Loan No.: M280207025**

Ladies and Gentlemen:

This letter agreement ("**Agreement**") is entered into between **MSCI 2007-IQ16 Retail 9654,
LLC** ("**Lender**"), having an address c/o LNR Partners, LLC, 1601 Washington Avenue, Suite 700,
Miami Beach, Florida 33139, the current holder of the loan described below (the "**Loan**"), and
Borrowers, having an address at 5690 DTC Boulevard, Suite 515, Greenwood Village, Colorado,
Capitalized terms not defined herein shall have the meanings ascribed to them in the Loan Documents.

The Loan is evidenced and secured by, among other things, (i) a Promissory Note dated October
10, 2007 (the "**Loan Date**"), in the original principal amount of $12,900,000 (the "**Note**"), executed by
Borrowers in favor of Royal Bank of Canada ("**Original Lender**"); (ii) a **Mortgage, Security
Agreement, Fixture Financing Statement and Assignment of Leases and Rents** dated as of the Loan
Date (the "**Security Instrument**"), executed by Borrowers in favor of Original Lender, recorded/filed
October 12, 2007 as Instrument No. 07-0147433 in the official records below 10674, page 01682 of
official public records of Hamilton County, Ohio (the "**Records**"); (iii) an Assignment of Leases and
Rents (the "**Assignment of Leases**") dated as of the Loan Date executed by Borrowers in favor of
Original Lender, recorded as Instrument 07-0147434, page 01725, in the Records; (iv) a Limited
Guaranty (the "**Guaranty**") dated as of the Loan Date executed by Gary Dragul ("**Guarantor**") in favor
of Lender; and (v) an Environmental Indemnity Agreement (the "**Environmental Indemnity**") dated as
of October 10, 2007 executed by Borrowers and Guarantor in favor of Lender.

The Note, the Security Instrument, the Assignment of Leases, the Guaranty, the Environmental
Indemnity and any and all other documents evidencing, securing or in any manner relating to the Loan
shall be collectively referred to as the "**Loan Documents.**"  For all purposes, this Agreement shall
constitute a Loan Document after the date hereof.  Capitalized terms not defined herein shall have the
meanings ascribed to them in the Loan Documents.

**EXHIBIT 1**

Page 2

1. **Status**. Lender maintains that the Loan is in default due in part to Borrowers' failure to timely pay the Loan payment due on May 1, 2010 and subsequent payments, as well as Borrowers' failure to pay real estate taxes on the real property securing the Loan in October 2010. As of August 1, 2014, the unpaid principal balance of the Loan was $12,418,135.53 (the "**Unpaid Principal Balance**"). Interest has accrued on the Unpaid Principal Balance at the note rate specified in the Note (the "**Note Rate Interest**") and at the default rate specified in the Note (the "**Default Rate Interest**"), and such interest, subject to limitations under the United States Bankruptcy Code 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"), will continue to accrue until the Loan is paid in full, unless otherwise provided for in this Agreement. The Unpaid Principal Balance, the Note Rate Interest and the Default Rate Interest shall collectively be referred to herein as the "**Indebtedness**". The term "**Indebtedness**" also includes any and all advances, debts, obligations, late payment fees, and liabilities of Borrowers under the Loan Documents or this Agreement, whether voluntary or involuntary, however arising, including, without limitation, advances made by the master servicer of the Loan ("**Master Servicer**"), together with any interest thereon and administration charges and any and all fees, costs and expenses incurred by Lender in connection with Borrowers' default under the Loan, including, but not limited to, advances for unpaid real estate taxes, title expenses, appraisal fees, property inspection costs and legal fees.

Borrowers intend to enter into an Agreement for Purchase and Sale of Real Property (the "**Sale Agreement**"), between Borrowers, as Seller, and Park City Commercial Properties, LLC, a Utah limited liability company ("**Buyer**"), as Buyer, which Borrowers have advised is contingent on this Agreement and the Discounted Payoff Amount, as defined below, providing for the sale of the Property (as defined below) encumbered by the Loan Documents for a purchase price of $16,150,000. Borrowers anticipate that the closing under the Sale Agreement will occur on or before October 8, 2014, but reserve the right to complete the closing under the Sale Agreement on or before December 1, 2014 with Buyer or a substitute buyer on the same material terms as those outlined in the Sale Agreement. Pursuant to the Sale Agreement, Borrower will establish an escrow account ("**Sale Escrow**") with Fidelity National Title Insurance Company as escrow agent (the "**Escrow Agent**"). Borrowers will deliver a true and complete executed copy of the Sale Agreement to Lender within two weeks of the Execution Date.

2. **Forbearance/Abeyance of Pending Matters**. Subject to the terms of this Agreement and provided no Termination Event (as defined below) occurs, Lender agrees: (a) it will not seek relief from the automatic stay in Borrowers' bankruptcy cases pending in the United States Bankruptcy Court for the District of Colorado (the "**Bankruptcy Cases**"); (b) it will hold various pending matters in abeyance as more fully set forth in section 25 below; (c) it will not take any steps to obtain a judgment or judgments against Borrowers or Guarantor; (d) it will not conduct a foreclosure sale of the property encumbered by the Loan Documents (the "**Property**"), prior to December 1, 2014 (the "**Forbearance Expiration Date**"). The period between the Effective Date and the earlier of (a) the day prior to the Forbearance Expiration Date or (b) the Payoff Date (as defined below) shall be referred to herein as the "**Forbearance Period**." Borrowers covenants and agrees to operate the Property in accordance and in compliance with the Loan Documents during the Forbearance Period, or as otherwise stipulated between Borrower and Lender. Borrowers agree as a condition of this Agreement to pay any taxes and insurance premiums due after the Execution Date and prior to the Forbearance Expiration Date unless otherwise provided for in this Agreement. Borrowers acknowledge and agree that this agreement by Lender to forbear constitutes full consideration for this Agreement and the additional rights and remedies of Lender set forth herein.

3. **Forbearance Payments**. During the Forbearance Period, Borrowers shall be required to pay to Lender the following: (i) $29,002 on account of accruing real estate taxes; and (ii) $1,426 on account of insurance premiums as adequate protection payments in the Bankruptcy Cases (collectively, the "**Forbearance Payments**"). Borrowers acknowledge and agree, however, that the Forbearance

Page 3

Payments required hereunder shall be received by Lender as only a partial payment of the Indebtedness, which Indebtedness is and shall at all times remain due and payable in full.

     4.    **Discounted Payoff**. Provided no Termination Event has occurred under this Agreement, Borrowers shall be entitled to satisfy its obligation to pay the Indebtedness, without any prepayment premium or penalty thereon, by paying Lender by wire transfer, no later than 2:00 p.m. Eastern time on the Forbearance Expiration Date, the sum of: (a) all unpaid principal in the amount of $12,418,135.53; plus (b) all unpaid interest at the Note Rate through the date of payoff, which date must occur between October 8, 2014 and December 1, 2014; plus (c) reimbursement of all tax advances and out of pocket fees, costs, and expenses incurred by Lender through and including the date of the payoff (this includes, without limitation, the sum of $1,339,676.08 as of August 25, 2014, plus all additional fees, costs, and expenses which are billed to and/or incurred by Lender after August 25, 2014 through the date of payoff, which shall include a liquidation fee equal to 1% of the principal balance of the Loan, payable by Lender); less (d) any escrows, reserves, suspense balances and/or funds in any lockbox or other cash management account held by Lender at the time of payoff (collectively, the "**Escrows**")[1]. The items listed in (a), (b), (c) and (d) shall be collectively referred to as the "**Discounted Payoff Amount**". The Discounted Payoff Amount must be paid to Lender by wiring immediately available funds as directed by Lender for receipt by Lender upon the closing of the sale of the Property which Discounted Payoff Amount shall be received by Lender no later than the Forbearance Expiration Date. Not later than one business day prior to the date of the proposed closing of the sale of the Property pursuant to the Sale Agreement and the associated remittance of the Discounted Payoff Amount to Lender (the "**Closing Date**"), Lender will furnish Borrower with a payoff statement setting forth the amount of the Discounted Payoff Amount as of the Closing Date, which shall include a summary, through the Closing Date, of (a) the unpaid interest due on the principal amount of the Loan at the Note Rate; (b) the reimbursement due for all tax advances and out of pocket fees, costs and expenses incurred by Lender after August 25, 2014 through and including the Closing Date, including any Transaction Costs (as defined below); and (c) the total amount of all Escrow. Prior to the Closing Date, Lender shall deliver to Escrow Agent a release or satisfaction of the recorded Loan Documents duly executed, acknowledged and in proper statutory form for recording, but subject to Lender's timely receipt of the Discounted Payoff Amount on the Closing Date. Borrowers are authorized, upon Lender's acknowledgement of receipt of the Discounted Payoff Amount, to prepare and record/file UCC-3 Terminations with respect to any UCC-1 Financing Statements held by Lender in the Records and/or the Office of the applicable Secretary of State in which the UCC-1 Financing Statement is filed.

     5.    **Material Leases**. Borrowers represent and warrant to Lender that, as of the Execution Date, the attached **Schedule 1** (the "**Material Leases Schedule**") includes all existing and proposed Material Leases (as defined below) and all expansions, renewals, modifications, and similar documents with respect to any such Material Leases, that in either case Borrowers or Guarantor or any of their respective affiliates, agents, brokers, employees or any other parties on their behalf has negotiated or entered into within the six (6) month period prior to the Execution Date. In addition, the Material Leases Schedule sets forth with respect to such Material Leases all material terms thereof including, without limitation, the identity of the tenant, square footage, term, rent, rent credits, abatements, work allowances, and tenant improvements, of such Material Leases. For purposes hereof, "**Material Leases**" means all leases, subleases, subsubleases, licenses, concession, kiosk and similar agreements pursuant to which a party is granted a possessory interest in, or right to use or occupy, all or any portion of space in the Property in excess of twenty percent (20%) of the net rentable square feet in the Property.

     6.    **Condition of Agreement**. It shall be a condition to Lender's agreement to the terms of this Agreement that Guarantor execute and deliver to Lender, simultaneously with Borrowers' execution hereof, the Joinder by and Agreement of Guarantor in form and substance attached hereto.

---

[1]  As of August 25, 2014, Lender is holding $153,132.10 in Escrows.

Page 4

7.    **Borrowers' Representations, Warranties and Acknowledgments**.    Borrowers represent, warrant, acknowledge, and agree to and with Lender that as of the Effective Date and the Execution Date:

(a)    Borrowers are duly organized, validly existing limited liability companies under the laws of the State of Ohio and are duly qualified to transact business. GDA Real Estate Management, Inc., by Gary Dragul as President ("**Borrowers Signatory**") is the Manager of each Borrower. Borrowers Signatory, acting alone without the joinder of any other members or managers of Borrowers or any other party, has the power and authority to execute and deliver this Agreement on behalf of and to duly bind Borrowers under this Agreement.   Subject to approval of the Bankruptcy Court, the execution and delivery of, and performance under, this Agreement by Borrowers have been duly and properly authorized by Borrowers and does not and will not (i) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Borrowers or Borrowers' articles of organization, certificate of formation or operating or limited liability company agreement or any other organizational document of Borrowers, or (ii) result in a breach or constitute or cause a default under any indenture, agreement, lease or instrument to which Borrowers are a party.

(b)    The Loan Documents constitute valid and legally binding obligations of Borrowers and Guarantor and are enforceable against Borrowers, Guarantor and all of the Property in accordance with their terms subject only to (i) applicable bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the rights of creditors generally, and (ii) the exercise of judicial discretion in accordance with general principles of equity (whether applied by a court of law or of equity).  There are no other modifications, verbal or written, to the Loan Documents other than those identified in the description of the Loan set forth above.

(c)    There is a pending sale of the Property for a purchase price of $16,150,000, subject to the execution and delivery of this Agreement.  In connection with the closing on same and as a condition of this Agreement, Borrowers shall be obligated to deliver to Lender: (i) no later than three business days prior to the Closing Date, a copy of the proposed closing statement for the sale and (ii) no later than one business day prior to the Closing Date, the executed closing statement for the sale.

(d)    Borrowers and Guarantor, by execution of the Joinder, on behalf of themselves and each and all of their respective past, present and future partners, members, managers, officers, directors, shareholders and heirs and each and all of the successors and assigns of each of the foregoing (collectively, "**Borrowers Parties**"), remise, release, acquit, satisfy and forever discharge Lender, Holders of Morgan Stanley Capital I Inc., Pass-Through Certificates, Series 2007-IQ16) ("**Trust**"), U.S. Bank National Association, a national banking association ("**Trustee**"),  and LNR Partners, LLC, Master Servicer and any and all other parties appointed and/or serving as servicers of the Loan ("**Servicer**"), all subsidiaries, parents and affiliates of Lender, Trust, Trustee and Servicer and each of the foregoing parties' predecessors in interest, and each and all of their respective past, present and future partners, members, managers, certificate holders, officers, directors, shareholders, employees, agents, contractors, representatives, participants and heirs and each and all of the successors and assigns of each of the foregoing (collectively, "**Lender Parties**") from any and all manner of debts, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, inactions, actions, claims, demands and causes of action of any nature whatsoever, whether at law or in equity, known or unknown, either now accrued or subsequently maturing, which any of them now has or hereafter can, shall or may have by reason of any matter, cause or thing, from the beginning of the world to and including the Execution Date, including, without limitation, matters arising out of or relating to (i) the Loan, (ii) the Loan Documents, (iii) the Indebtedness, (iv) the Property, including the development, financing, operation and leasing of same, and (v) any other agreement or transaction between any of Borrowers Parties and any of Lender Parties

Page 5

concerning matters arising out of or relating to the items set forth in subsections (i) - (iv) above. Borrowers and Guarantor on behalf of Borrowers Parties, covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of Lender Parties by reason of or in connection with any of the foregoing matters, claims or causes of action.

Subject to a Termination Event (as described below), in addition, upon the issuance of a sheriff's, clerk's, trustee's deed or similar for the Property to Lender or its designee pursuant to a judicial or trustee's sale of the Property, or alternatively, Lender's or Lender's designee's acquisition of the Property by a deed in lieu of foreclosure (any of the above, a **"Vesting Document"**), Borrowers and Guarantor, on behalf of Borrowers Parties, shall be deemed to have released acquitted, satisfied and forever discharged Lender Parties from any and all manner of debts, accounting, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, actions, claims, demands and causes of action of any nature whatsoever, whether at law or in equity, whether known or unknown, either now accrued or subsequently maturing, which any of them now or then has or hereafter can, shall or may have by reason of any matter, cause or thing, from the beginning of the world to and including the date the Vesting Document is executed and delivered to Lender, including, without limitation, matters arising out of or relating to (i) the Loan, (ii) the Loan Documents, (iii) the Indebtedness, (iv) the Property, including the development, financing, operation and leasing of same, and (v) any other agreement or transaction between any of Borrowers Parties and any of Lender Parties concerning matters arising out of or relating to the items set forth in subsections (i) - (iv) above. Borrowers and Guarantor, on behalf of Borrowers Parties, covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of Lender Parties by reason of or in connection with any of the foregoing matters, claims or causes of action.

(e)     Borrowers Parties and Guarantor do not have any defenses, set offs, claims, counterclaims or causes of action of any kind or nature whatsoever against any of Lender Parties with respect to the Loan, the Loan Documents, the Indebtedness, and to the extent that Borrowers might otherwise have any of such claims, Borrowers Parties and Guarantor waive, release and relinquish any and all of such defenses, setoffs, claims and counterclaims; provided, however, Lender acknowledges that Borrowers shall be entitled to a credit in computing the Discounted Payoff Amount for the total amount of all funds held by Lender in escrow with respect to the Loan.

(f)     All real estate taxes, personal property taxes, sales taxes and similar liabilities, assessments or expenses currently due and payable with respect to the Property have been fully and timely paid or will be fully and timely paid as of closing of the sale of the Property, unless otherwise provided for in this Agreement.

(g)     The Assignment of Leases constitutes an absolute, unconditional, current, assignment of rents, issues and profits from the Property.

(h)     Except for the Bankruptcy Cases and related adversary proceedings, there are no pending or threatened suits, judgments, arbitration proceedings, administrative claims, executions or other legal or equitable actions or proceedings against Borrowers or the Property, or any liens, mortgages (other than the Security Instrument), claims of lien or other encumbrances against the Property other than the exceptions set forth on Schedule B of Lender's loan title insurance policy (the **"Permitted Encumbrances"**), or any pending or threatened condemnation proceedings or annexation proceedings affecting the Property or any agreements to convey any portion of the Property, or any rights thereto to any person or entity not disclosed in this Agreement, including, without limitation, any government or governmental agency.

Page 6

(i)      Neither Borrowers nor Guarantor or any direct or indirect owner of Borrowers has any direct or indirect financial interest in Buyer or any of Buyer's beneficial owners or affiliates as of the Execution Date, and, as of the Closing Date, neither Borrowers nor Guarantor or any direct or indirect owner of Borrowers shall (i) possess or obtain any direct or indirect financial interest in Buyer or any direct or indirect owner of Buyer, or (ii) receive any compensation for the sale of all or any portion of the Property except that Borrowers may distribute up to $953,000 of net sale proceeds, if available, to Borrowers' members.

8.     **Lender's Representations, Warranties and Acknowledgments.**  Lender represents, warrants, acknowledges, and agrees to and with Borrowers that as of the Effective Date and the Execution Date:

(a)      Lender is a duly organized, validly existing limited liability company under the laws of the State of Ohio and is duly qualified to transact business under the laws of the State of Ohio. LNR Partners, LLC is the non-member manager of Lender and the special servicer of the Loan.  LNR Partners, LLC, acting alone without the joinder of any other members or managers of Lender or any other party, has the power and authority to execute and deliver this Agreement on behalf of and to duly bind Lender under this Agreement.  Subject to approval of the Bankruptcy Court, the execution and delivery of, and performance under, this Agreement by Lender has been duly and properly authorized by Lender and does not and will not (i) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Lender or Lender's articles of organization, certificate of formation or operating or limited liability company agreement or any other organizational document of Lender, or (ii) result in a breach or constitute or cause a default under any indenture, agreement, lease or instrument to which Lender is a party.

(b)      Effective only upon the 91st day after Lender's indefeasible receipt of the Discounted Payoff Amount in accordance with the terms of this Agreement, Lender, on behalf of itself and each and all of its respective past, present and future partners, members, managers, officers, directors, shareholders and heirs and each and all of the predecessors, successors and assigns, and on behalf of the Trust, Trustee, Servicer, and all subsidiaries, parents and affiliates of Trust, Trustee and Servicer and each of the foregoing parties' predecessors in interest, and each and all of their respective past, present and future partners, members, managers, certificate holders, officers, directors, shareholders, employees, agents, contractors, representatives, participants and heirs and each and all of the successors and assigns of each of the foregoing (collectively, "**Lender Parties**"), will remise, release, acquit, satisfy and forever discharge Borrowers and Guarantor and the Borrowers Parties from any and all manner of debts, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, inactions, actions, claims, demands and causes of action of any nature whatsoever, whether at law or in equity, known or unknown, either now accrued or subsequently maturing, which any of them now has or hereafter can, shall or may have by reason of any matter, cause or thing, from the beginning of the world to and including the closing, including, without limitation, matters arising out of or relating to (i) the Loan, (ii) the Loan Documents, (iii) the Indebtedness, (iv) the Property, including the development, financing, operation and leasing of same, and (v) any other agreement or transaction between any of Borrowers Parties and any of Lender Parties concerning matters arising out of or relating to the items set forth in subsections (i) - (iv) above.  Effective only upon the 91st day after Lender's indefeasible receipt of the Discounted Payoff Amount, Lender on behalf of Lender Parties, covenants and agrees never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of Borrowers Parties by reason of or in connection with any of the foregoing matters, claims or causes of action; provided, however, from the date of Lender's indefeasible receipt of the Discounted Payoff Amount in accordance with the terms of this Agreement through such 91st day, Lender on behalf of Lender Parties shall not institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of Borrowers

Page 7

Parties by reason of or in connection with enforcement of the Loan unless an action is commenced or threatened against Lender or any of Lender Parties seeking to disgorge or otherwise avoid the payment of the Discounted Payoff Amount.

9.     **No Bankruptcy Intent; Relief from Stay.**  Except for the Bankruptcy Cases and related adversary proceedings, none of Borrowers or Guarantor shall take any action to (a) file a voluntary petition with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended (the "Bankruptcy Code"); (b) be the subject of any order for relief issued under the Bankruptcy Code; (c) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (d) seek or consent to or acquiesce in the appointment of any trustee, receiver, conservator, liquidator or assignee for the benefit of creditors; or (e) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustments, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors (each of such actions described above being a "Debtor Proceeding"). Borrowers and Guarantor acknowledge that the filing of any petition or the seeking of any relief in a Debtor Proceeding by any of Borrower Parties, whether directly or indirectly, would be in bad faith and solely for purposes of delaying, inhibiting or otherwise impeding the exercise by Lender of Lender's rights and remedies against Borrowers and the Property pursuant to the Loan Documents or at law. In the event that Borrower or Guarantor shall take any action constituting a Debtor Proceeding, and such action causes Lender to seek necessary or appropriate relief: (i) Lender shall thereupon be entitled to and Borrowers and Guarantor irrevocably consent to the relief from any automatic stay imposed by Section 362 of Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided in this Agreement with respect to the Property and as otherwise provided by law, and Borrowers and Guarantor hereby irrevocably waive any right to object to such relief, and acknowledges that no reorganization in bankruptcy is feasible; (ii) Borrowers and Guarantor waive their exclusive rights pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably agrees and consents that Lender may file a plan immediately upon the entry of an order for relief if an involuntary petition is filed against Borrower or Guarantor or upon the filing of a voluntary petition by Borrowers or Guarantor; (iii) in the event that Lender shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120 day exclusive period, Borrowers and Guarantor shall not object to any such motion, and (iv) Borrowers and Guarantor waive any rights they may have pursuant to Section 108(b) of the Bankruptcy Code. The provisions of this Section shall survive the termination of this Agreement

10.     **Future Negotiations.**  Borrowers and Guarantor acknowledge and agree that (a) Lender has no obligation whatsoever to discuss, negotiate or to agree to any restructuring of the Loan, or any modification, amendment, restructuring or reinstatement of the Loan Documents or to forbear from exercising its rights and remedies under the Loan Documents, except as expressly provided in this Agreement; (b) if there are any future discussions among Lender, Borrowers and/or Guarantor concerning any such restructuring, modification, amendment or reinstatement, then no restructuring, modification, amendment, reinstatement, compromise, settlement, agreement or understanding with respect to the Loan, the Loan Documents, the Property or any aspect thereof, shall constitute a legally binding agreement or contract or have any force or effect whatsoever unless and until reduced to writing and signed by authorized representatives of the parties; and (c) Borrowers and Guarantor shall not assert or claim in any legal proceedings or otherwise that any such agreement exists except in accordance with the terms of this Section.

11.     **Termination Events.**  Each of the following shall constitute a termination event ("**Termination Event**"), resulting in the termination of the forbearance and any right of Borrowers to satisfy the Loan by paying the Discounted Payoff Amount granted under this Agreement, entitling Lender

Page 8

to retain and apply any deposit as Lender, in its sole and absolute discretion, deems necessary and appropriate consistent with the terms and provisions of the Loan Documents and Borrower stipulates to relief from the automatic stay so that Lender shall be immediately entitled, without any further notice to Borrowers or Guarantor, to exercise all of its right and remedies under this Agreement and the Loan Documents, in equity and at law, including, but not limited to, demanding immediate payment of the entire Indebtedness of the Loan and commencing or continuing, as applicable, and completing foreclosure proceedings (whether commenced by judicial action or non-judicial power of sale, if applicable) ("**Foreclosure Proceedings**") against Borrowers and the Property,

(a) If Borrowers fails to timely and fully pay any of the Forbearance Payments or any other payment required hereunder, including, but not limited to, the Transaction Costs (defined below);

(b) If Borrowers fail to pay the Discounted Payoff Amount to Lender on or before the Forbearance Expiration Date;

(c) If Borrowers or Guarantor fail to timely perform any material (as determined by Lender in its sole discretion) non-monetary obligation of Borrowers or Guarantor under the Loan Documents (subject to the terms of this Agreement) or this Agreement;

(d) If, after the date hereof, Borrowers or Guarantor or any affiliate or relative of Borrowers or Guarantor files suit against any Lender Parties by reason or in connection with the Loan, the administration of the Loan, the Indebtedness, the Property, or any related matters, claims or causes of action;

(e) If Borrowers or Buyer breaches, cancels, terminates, repudiates, or expresses its intention to withdraw from the Sale Agreement;

(f) If Borrowers fail to file a motion by September 24, 2014 seeking approval this Agreement in the Bankruptcy Cases;

(g) If Borrowers fail to obtain the entry of an order in the Bankruptcy Cases, in form reasonably acceptable to Lender, approving this Agreement on or before October 20, 2014;

(h) If Borrowers fail to file a motion by September 24, 2014, seeking approval of the Sale Agreement in the Bankrutpcy Cases;

(i) If the Borrowers fail to obtain entry of an order in the Bankruptcy Cases, in form reasonably acceptable to Lender, approving the Sale Agreement on or before October 20, 2014;

(j) If any representation or warranty of Borrowers or Guarantor in this Agreement shall be untrue or inaccurate in any material respect, including, without limitation, in the Material Leases Section or the Material Leases Schedule; or

(k) If Guarantor files or becomes subject to any Debtor Proceeding.

12.    **Cooperation of Borrowers upon Termination Event**. Upon the occurrence of a Termination Event, Borrowers stipulate to relief from the automatic stay and Lender shall immediately be entitled, without further notice to Borrowers or Guarantor to exercise any or all of Lender's rights and remedies under this Agreement  and the Loan Documents, in equity and at law (all of such rights and remedies being cumulative), including, but not limited to and as determined by Lender in its sole discretion, demanding immediate payment of the entire Indebtedness, commencing proceedings seeking

Page 9

appointment of a receiver ("**Receiver**") for the Property and/or the other real and personal property securing the Loan (the "**Other Collateral**") ("**Receivership Proceedings**") and commencing or completing foreclosure proceedings against Borrowers, the Property and/or the other real and personal property securing the Loan (the "**Other Collateral**"), whether commenced by judicial action or non-judicial power of sale, if applicable ("**Foreclosure Proceedings**") or taking title to the Property and/or the other Collateral by deed in lieu of foreclosure ("**Deed in Lieu of Foreclosure**"). It is the express intent of Borrowers, Guarantor and Lender that, upon the occurrence of a Termination Event, Lender shall be able to acquire possession of and title to the Property and the Other Collateral at the earliest possible date, without interference by and with full cooperation of Borrowers and Guarantor. In consideration of and as a material inducement to Lender to enter into this Agreement, each of Borrowers and Guarantor agrees to waive and does hereby waive and release any and all defenses and other rights it may otherwise have to contest a Termination Event and Lender's exercise of its rights and remedies in connection therewith and agrees not to challenge in any way the validity of and to fully cooperate with any Receivership Proceedings or Foreclosure Proceedings related to the Property and/or the Other Collateral or any other exercise by Lender of its rights and remedies under this Agreement and the Loan Documents, in equity or at law, whether pending on the Execution Date or commenced by Lender following the occurrence of a Termination Event. In addition, upon the occurrence of a Termination Event, neither Borrowers nor Guarantor shall take any action of any kind or nature whatsoever, either directly or indirectly, to delay, oppose, impede, obstruct, hinder, enjoin or otherwise interfere with, and Borrowers and Guarantor will cooperate and comply with the exercise by Lender of any and all of Lender's rights and remedies against Borrowers or with respect to the Property and the Other Collateral, or any other rights or remedies of Lender with respect to the Loan, the Loan Documents and this Agreement, in equity and at law, including, without limitation, any actions by Lender to exercise any assignment of rents and leases (whether or not involving the appointment of a Receiver with or without, at Lender's discretion, the power, among other things, to market, sell and convey the Property, at Lender's option), to obtain title to the Property and the Other Collateral by a stipulated judgment of foreclosure or by a consensual Deed in Lieu of Foreclosure, to cause Borrowers or Receiver to market, sell and convey the Property, or to enforce the Guaranty.

13. **Conveyance Documents**. Upon the occurrence of a Termination Event and in connection with Foreclosure Proceedings or a Deed in Lieu of Foreclosure, Borrowers shall execute and deliver to convey to Lender or its designee all documents necessary to convey to Lender or its designee all ownership and development rights with respect to the Property, including, without limitation, a special warranty deed or its equivalent, all applicable state and local transfer forms and bulk sales releases required in connection with such a conveyance, a bill of sale, an assignment and/or other conveyance documents necessary to transfer, convey and assign all leases, any service contracts for which Lender or its designee agrees to accept an assignment, all tangible and intangible, real and personal and mixed property used, useable or intended to be used in connection with the ownership, management and/or use of the Property, and all rights of Borrowers to use any trademarks and logos for all or any portion of the Property, and such documents and instruments, including, without limitation, evidence of the authority of Borrowers to convey the Property to Lender or its designee and the good standing of Borrowers, as Lender, its designee or the title company insuring title to the Property may determine are necessary to issue to Lender or its designee an owner's title insurance policy insuring the fee simple title to the Property, subject only to the Permitted Encumbrances. As further consideration of and as a material inducement to Lender to enter into this Agreement, Borrowers shall not interfere with or oppose Lender in and hereby consent to any (i) action to quiet title, if any, which may be instituted by Lenders and/or any title company on behalf of Lender to perfect its right, title and interest in the Property, and (ii) Lender or its designee substituting into condemnation proceedings with respect to the Property, if any.

14. **Property Materials**. If following a Termination Event a sheriff's, clerk's or trustee's deed for the Property is issued to Lender or its designee pursuant to a judicial or trustee's sale, or if Lender or its designee acquires the Property by Deed in Lieu of Foreclosure or otherwise, promptly upon

Page 10

request by such acquiring party, Borrowers shall deliver and/or pay to Lender or its designee the following as to all or any portion of the Property acquired by Lender or its designee: (i) possession of the Property, (ii) the originals (or true and correct copies, if the originals are not available) of all guaranties and warranties given with respect to all or any portion of the Property or any improvement located thereon which Borrowers have in its possession, (iii) the originals (or true and correct copies, if the originals are not available) of all service contracts and management agreements then in effect with respect to the Property, (iv) the originals (or true and correct copies, if the originals are not available) of all plans, specifications, working drawings and surveys of or relating to the Property or to the construction of the buildings and related improvements located thereon, (v) the originals (or true and correct copies, if the originals are not available) of all governmental consents, approvals, licenses, permits, certificates of occupancy, zoning approvals, building permits and similar documents relating to the Property, (vi) copies of all books and records in any way relating to the Property, (vii) the balance of any funds in any security deposit accounts and any and all other tenant security deposits, and any and all advance rentals or similar fees, if any, (viii) the originals (or true and correct copies, if the originals are not available) of all termite or other inspection reports, bonds, warranties and guaranties relating to the Property, (ix) any and all income from the Property received by or on behalf of Borrowers and then being held by or on behalf of Borrower; (x) the originals (or true and correct copies, if the originals are not available) of all certificates, binders and policies of insurance relating to the Property, (xi) the originals (or true and correct copies, if the originals are not available) of all contracts and agreements with contractors, architects, engineers, surveyors and others relating to all or any portion of the Property, (xii) the originals (or true and correct copies, if the originals are not available) of all tenant leases and occupancy agreements affecting all or any portion of the Property, (xiii) all leasing and other files, books and records with respect to all or any portion of the Property, and (xiv) any bankruptcy claims relating to any current or former tenant of the Property, duly assigned to Lender or its designee.

15. **Cooperation Covenants**. The covenants and agreements of Borrowers contained in the immediately preceding 3 Sections of this Agreement shall be referred to as the "**Cooperation Covenants.**"

16. **Earnest Money**. If Buyer defaults under the Sale Agreement, Borrowers shall authorize and direct the Escrow Agent to deliver, or Borrowers shall deliver (if Escrow Agent delivers the Earnest Money Deposit to Borrowers), to Lender, no later than the Forbearance Expiration Date, any funds actually released by the Sale Escrow as liquidated damages, including, without limitation, any earnest money deposits to which Borrowers are entitled under the Sale Agreement (the "**Earnest Money Deposit**"). Notwithstanding the payment to Lender of all or any portion of the Earnest Money Deposit, Lender does not waive any of its rights or remedies against Borrowers or Guarantor under the Loan Documents.

17. **Liability of Borrowers and Guarantor**. Borrowers and Guarantor agree and acknowledge that they are jointly and severally liable for the Indebtedness and all other obligations of Borrowers to Lender under the Loan Documents.

18. **Indemnity**. Borrowers agree to indemnify and hold harmless Lender from any liabilities, costs, expenses (including attorneys' and paralegal fees at all tribunal levels) or claims of the State in which the Property is located (the "**State**") or any other governmental agency for documentary stamps, intangible, mortgage or other similar taxes and any interest or penalties thereon which may be or become due in connection with the execution or delivery of this Agreement.

19. **Costs and Expenses**. Borrowers shall pay all costs and expenses incurred or to be incurred by Lender in connection with this Agreement, including, without limitation, the costs of any third party reports obtained by Lender and the legal fees and disbursements of Lender's counsel (collectively, the "**Transaction Costs**"). If Borrowers remit the Discounted Payoff Amount on the

Page 11

Closing Date, then the Transaction Costs shall be included as part of the Discounted Payoff Amount. Borrowers shall pay or shall have paid all the Transaction Costs incurred by Lender (i) through and after the execution of this Agreement no later than the earlier of the Closing Date and the Forbearance Expiration Date, and (ii) after the first to occur of the Closing Date and the Forbearance Expiration Date, in connection with a breach of any of the Cooperation Covenants or in connection with any other provision of this Agreement that expressly or by its terms survives the Closing Date and the payoff of the Loan, no later than ten business days after Borrowers' receipt of a statement from Lender detailing such Transaction Costs. Borrowers acknowledge and agree that Borrowers shall be responsible for all the Transaction Costs incurred subsequent to the execution of this Agreement even if Borrowers fail to pay the Discounted Payoff Amount to Lender on or before the Forbearance Expiration Date. Borrowers further acknowledge and agree that none of the Transaction Costs will be applied by Lender to reduce the Indebtedness or the Discounted Payoff Amount. The provisions of this Section shall survive the termination of the forbearance provided herein.

20.     **Full Force and Effect**. The Loan shall remain unmodified and in full force and effect as a matured obligation. Except as may be modified by this Agreement, Borrowers agree to comply with all terms and provisions of the Loan Documents.

21.     **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all such counterparts together shall constitute one and the same instrument.

22.     **Invalid Provision to Affect No Others**. If any clause or provision operates or would prospectively operate to invalidate this Agreement, in whole or in part, then such clause or provision only shall be deemed deleted, as though not contained, and the remainder of this Agreement, shall remain operative and in full force and effect. Without limitation of the foregoing, this Agreement and all other agreements made by Borrowers relating directly or indirectly to the Indebtedness are expressly limited so that in no event or contingency whatsoever shall the amount of interest received, charged or contracted for by Lender exceed the highest lawful amount of interest permissible under the laws of the State. If, under any circumstances whatsoever, performance of any provision of the Note, the other Loan Documents or this Agreement, at the time performance of such provision shall be due, shall result in the highest lawful rate of interest permissible under the laws of the State being exceeded, then ipso facto, the amount of interest received, charged or contracted for by Lender shall be reduced to the highest lawful amount of interest permissible under the laws of the State, and if for any reason whatsoever, Lender shall ever receive, charge or contract for, as interest, an amount which would be deemed unlawful, such amount of interest deemed unlawful shall be applied to principal (whether or not due and payable) or refunded to Borrowers (if all principal has been paid) and not to the payment of interest.

23.     **Successors or Assigns**. Whenever any Party is named or referred to in this Agreement, the heirs, executors, legal representatives, successors, successors-in-title and assigns of such Party shall be included. All covenants and agreements in this Agreement shall bind and inure to the benefit of the heirs, executors, legal representatives, successors, successors-in-title and assigns of the Parties, whether so expressed or not.

24.     **Dismissal of Pending Matters**. Subject to and conditioned upon Lender's indefeasible receipt of the Discounted Payoff Amount on the Closing Date and the Borrowers' fulfillment of all other obligations herein: (a) Lender and Borrower shall dismiss, with prejudice, the case entitled *MSCI 2007-IQ16 Retail 9654, LLC v. Prospect Square 07 A, LLC et al*, Adversary Proceeding Case No. 14-01182 pending in the United States Bankruptcy Court for the District of Colorado, and Lender shall waive any claim it may have with respect to any lien against the retainer held by Borrowers' bankruptcy counsel ("**Adversary 1**"); (2) Lender and Borrower shall dismiss, with prejudice, the case entitled *Prospect Square 07 A, LLC et al v. MSCI 2007-IQ16 Retail 9654, LLC*, Adversary Proceeding Case No. 14-01182

Page 12

pending in the United States Bankruptcy Court for the District of Colorado, Adversary Case No. 14-01182 ("**Adversary 2**"); (3) Lender and Guarantor shall dismiss, with prejudice, the case entitled *MSCI 2007-IQ16 Retail 9654, LLC v. Gary J. Dragul*, Case No. 1:14-cv-00287-TSB pending in the United States District Court For The Southern District of Ohio Western Division (Cincinnati) (the "**Ohio Case**"); and (4) Lender and Borrower shall dismiss, with prejudice, the case entitled *MSCI 2007-IQ16 Retail 9654, LLC v. Prospect Square 07, LLC, et. al.*, Case No. A1305225 pending in the Hamilton County Court of Common Please (the "**Ohio Receivership Case**").

25.   **Stay of Pending Matters**.  In order to minimize additional litigation costs, within five days after executing this Agreement: (a) Borrowers and the Lender shall file motions in the Bankruptcy Court seeking to hold Adversary 1 and Adversary 2 in abeyance and requesting that the Court vacate all pending scheduling orders, discovery cut-offs and all other pending deadlines; (b) Borrowers and Lender shall file a stipulation in the Bankruptcy Court requesting that the hearing on the Adequacy of the Amended Disclosure Statement, which is current set for October 2, 2014 and the deadline to object thereto, which is currently set for September 18, 2014 be vacated; (c) Guarantor and Lender shall file a motion in the Ohio Case, seeking to hold the matter in abeyance and requesting that the Court vacate all pending scheduling orders, discovery cut offs and all other pending deadlines.

26.   **Bankruptcy Court Approval**.  This Agreement is subject to, and shall not become effective, until approved by written order of the Bankruptcy Court.  If the Bankruptcy Court declines to approve the material terms and conditions of the Agreement, this Agreement shall be null and void and have no further force and effect, and each of the parties hereto shall be free to exercise any and all of their respective rights and remedies with respect to the matters that are subject of this Agreement.

27.   **Governing Law**.  Subject to the provisions of paragraph 22 of this Agreement, in all other respects, this Agreement shall be governed, construed, applied and enforced in accordance with the laws of the State of Colorado and applicable laws of the United States of America.

28.   **WAIVER OF TRIAL BY JURY**.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWERS, GUARANTOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, ANY OTHER LOAN DOCUMENT, OR THE ENVIRONMENTAL INDEMNITY AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THE LOAN DOCUMENTS AND THE ENVIRONMENTAL INDEMNITY AGREEMENT OR IN ANY WAY RELATING TO THE PROPERTY (INCLUDING, WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE. THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO ENTER THIS AGREEMENT.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

Please sign below to acknowledge Borrowers' agreement to the above terms.

Very truly yours,

**MSCI 2007-IQ 16 Retail 9654, LLC**

By:    LNR Partners, LLC, a Florida limited liability company

By: _____
Name: _____
         Arnold Shulkin
Title: _____
        Vice President

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

Please sign below to acknowledge Borrowers' agreement to the above terms.

Very truly yours,

**MSCI 2007-IQ 16 Retail 9654, LLC**

By:     LNR Partners, LLC, a Florida limited liability company

By: _____
Name: _____Arnold Shulkin_____
Title: _____Vice President_____

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

Please sign below to acknowledge Borrowers' agreement to the above terms.

Very truly yours,

**MSCI 2007-IQ 16 Retail 9654, LLC**

By:    LNR Partners, LLC, a Florida limited liability company

By: _____
Name:     Arnold Shulkin
Title:     Vice President

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

Page 14

**(BORROWERS' SIGNATURE PAGE TO AGREEMENT)**

**AGREED TO AND ACCEPTED THIS**

30ᵗʰ **DAY OF** September **, 20** 14 **:**

**BORROWERS:**

*Prospect Square 07A, LLC,* an Ohio limited liability company

By:  GDA Real Estate Management, Inc., its Manager

By: _____
       Gary J. Dragul, President

*Prospect Square 07B, LLC,* an Ohio limited liability company

By:  GDA Real Estate Management, Inc., its Manager

By: _____
       Gary J. Dragul, President

*Prospect Square 07C, LLC,* an Ohio limited liability company

By:  GDA Real Estate Management, Inc., its Manager

By: _____
       Gary J. Dragul, President

*Prospect Square 07D, LLC,* an Ohio limited liability company

By:  GDA Real Estate Management, Inc., its Manager

By: _____
       Gary J. Dragul, President

*Prospect Square 07E, LLC,* an Ohio limited liability company

By:  GDA Real Estate Management, Inc., its Manager

By: _____
       Gary J. Dragul, President

MIAMI 4324771.6 79681/41968

## SCHEDULE 1

## MATERIAL LEASES SCHEDULE

No applicable leases.

## JOINDER BY AND AGREEMENT OF GUARANTOR
### (Loan No. M280207025)

Gary J. Dragul ("**Guarantor**"), being guarantor(s) of the Loan (as such term is defined in that certain DPO Letter Agreement of even date herewith by and between **MSCI 2007-IQ16 Retail 9654, LLC**, as "**Lender**", and **Prospect Square 07A, LLC, Prospect Square 07B, LLC, Prospect Square 07C, LLC, Prospect Square 07D, LLC, Prospect Square 07E, LLC** ("**Borrowers**") pursuant to that certain Guaranty dated as of October 10, 2007 executed by Guarantor in favor of Original Lender, and that certain Environmental Indemnity Agreement executed by Guarantor and Borrowers in favor of Original Lender, as both are now held by Lender (collectively, the "**Guaranty**"), hereby represents, warrants, acknowledges and agrees with Lender the following:

1.     **Reaffirmation of Guaranty**.  Guarantor consents to the execution and delivery of the Agreement by Borrowers and agrees and acknowledges that the liability of such Guarantor under the Guaranty shall not be diminished in any way by the execution and delivery of the Agreement or by the consummation of any of the transactions contemplated thereby, except to the extent expressly provided for in the Agreement.

2.     **Confirmation of Representations and Covenants**.  Guarantor confirms the representations and warranties and agrees to the covenants regarding Guarantor set forth in the Agreement.

3.     **WAIVER OF TRIAL BY JURY**.  GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS JOINDER, THE NOTE, THE SECURITY INSTRUMENT, OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF GUARANTOR OR LENDER RELATING TO THE LOAN AND THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS JOINDER.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THE AGREEMENT.  LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR.

4.     **Defined Terms**.  All terms that are used herein that are not defined herein shall have the meaning ascribed to them in the Agreement.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

Guarantor has executed and delivered this Joinder to be effective as of the Effective Date of the Agreement.

GUARANTOR:

Gary J. Dragul, an individual