IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PROSPECT SQUARE 07 A, LLC, | ) | Case No. 14-10896-EEB |
| PROSPECT SQUARE 07 B, LLC, | ) | Case No. 14-10897 EEB |
| PROSPECT SQUARE 07 C, LLC, | ) | Case No. 14-10899 EEB |
| PROSPECT SQUARE 07 D, LLC, | ) | Case No. 14-10900 EEB |
| PROSPECT SQUARE 07 E, LLC | ) | Case No. 14-10902 EEB |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | *Jointly Administered Under* |
| MSCI 2007-IQ16 RETAIL 9654, LLC, an | ) | *Case No. 14-10896-EEB* |
| Ohio limited liability company | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PROSPECT SQUARE 07 A, LLC, | ) | |
| PROSPECT SQUARE 07 B, LLC, | ) | |
| PROSPECT SQUARE 07 C, LLC, | ) | |
| PROSPECT SQUARE 07 D, LLC, | ) | |
| PROSPECT SQUARE 07 E, LLC | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

MSCI 2007-IQ16 Retail 9654, LLC (hereinafter "**Secured Creditor**"), by and through its undersigned counsel, pursuant to 11 U.S.C. §362(d)(1), hereby submits its Motion for Relief from the Automatic Stay and in support thereof states as follows:

### I. SUMMARY OF REQUESTED RELIEF

As more fully set forth below, Secured Creditor is entitled to immediate relief from the Automatic Stay. Cause exists for relief from the automatic stay in that the Debtor failed to perform its obligations under the court-approved settlement agreement between the Secured Creditor and the Debtors. Under this settlement agreement, the Debtors' failure to close a sale and make a discounted payoff by December 1, 2014, was a terminating event upon which the Debtors agreed and stipulated to relief from the automatic stay.

## II. BACKGROUND

1. Secured Creditor is an Ohio limited liability company whose address is c/o LNR Partners LLC, 1601 Washington Avenue, Suite 700, Miami Beach, Florida 33139. Secured Creditor is a creditor in each of the Bankruptcy Cases.

2. On January 29, 2014 (the "**Petition Date**"), Prospect Square 07 A, LLC, Prospect Square 07 B, LLC, Prospect Square 07 C, LLC, Prospect Square 07 D, LLC and Prospect Square 07 E, LLC (the "**Debtors**") filed Voluntary Petitions for Relief Under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Cases**") in the United States Bankruptcy Court for the District of Colorado (the "**Court**").

3. Each case involves "Single Asset Real Estate" ("**SARE**") as the term is defined in 11 U.S.C. 101(51)(B). Each Debtor checked the box identifying its case as SARE.

4. The Debtors own an interest in certain real estate comprised of a shopping center located at 9654 Colerain Avenue, Cincinnati, Ohio 45251, described more fully on **Exhibit A** attached hereto and incorporated herein (the "**Real Estate**").

5. On June 30, 2013, Secured Creditor commenced an action against the Debtors in the Court of Common Pleas, Hamilton County, Ohio, Case No. A-1305225 (the "**Enforcement Action**") seeking to enforce its rights and remedies against the Debtors' assets including the Real Estate, rents, leases, proceeds and all personal property of the Debtors (collectively the "**Real Estate and Other Collateral**").

6. On July 30, 2013, in the Enforcement Action, Plaintiff filed its motion for the appointment of a receiver (the "**Receiver Motion**") seeking the appointment of a receiver with respect to the property and to collect the rents and proceeds and take such other actions as more fully described in the Receiver Motion.

## III. SECURED CREDITOR'S LOAN TO DEBTORS

7. On or about October 10, 2007, the Debtors, jointly and severally, executed and delivered to Royal Bank of Canada ("**Original Lender**") a promissory note in the principal amount of $12,900,000 (the "**Promissory Note**").

8. The Promissory Note was assigned and transferred as follows:

   (a) From Original Lender to LaSalle Bank National Association, as Trustee for the Holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 ("Assignee #1") by Allonge to the Promissory Note;

   (b) From Bank of America, N.A., a national banking association (successor by merger to Assignee #1), as Trustee for the holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16, to U.S. Bank National Association, a national banking association, as Trustee for the holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 ("**Assignee #2**"), by Allonge to the Promissory Note; and

      (c)    From Assignee #2 to Secured Creditor by Allonge attached to the Promissory Note. The Promissory Note, together with the aforementioned Allonges, is referred to herein as the "**Note**".

9.    To secure the obligations evidenced by the Promissory Note, the Debtors executed and delivered to Original Lender a Mortgage, Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents (the "**Original Mortgage**") dated as of October 10, 2007 and recorded October 12, 2007 as instrument number 07-0147433 in official record book 10674 page 01682 of the Hamilton County, Ohio Recorder, which Mortgage encumbers the Real Estate.

10.    The Original Mortgage has been assigned and transferred as follows:

    (a)    From Original Lender to Assignee #1 by an Assignment of Loan Documents and Mortgage, dated as of November 8, 2007 and recorded on July 25, 2008 as Instrument Number 08-0103120 in Official Record Book 10909, Page 01302 of the Hamilton County Recorder;

    (b)    From Bank of America, N.A., a national banking association (successor by merger to Assignee #1), to Assignee #2 by an Assignment of Mortgage, Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents and Other Loan Documents dated April 16, 2013 and recorded on April 25, 2013 as Instrument Number 13-0055323 in Official Record Book 12298, Page 02604 of the Hamilton County, Ohio Recorder; and

    (c)    From Assignee #2 to Secured Creditor by an Assignment of Mortgage, Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents and Other Loan Documents dated May 13, 2013 and recorded on May 15, 2013 as Instrument Number 13-0065032 in Official Record Book 12314, Page 02555 of the Hamilton County, Ohio Recorder.

The Original Mortgage, together with the aforementioned Assignments thereof, is hereinafter collectively referred to as the "**Mortgage**".

To further secure obligations evidenced by the Promissory Note, the Debtors executed and delivered to Original Lender, an Assignment of Lease and Rents (the "**Assignment of Rents**") dated October 10, 2007. The Original Lender's interest in the Assignment of Rents has been assigned to Secured Creditor pursuant to a series of assignments of Assignment of Rents.

11.    As of the January 29, 2013, the Petition Date, the Debtors were indebted to Secured Creditor in the approximate amount of $18,768,462.69 (the "**Pre-Petition Secured Debt**") consisting of:

    (a)    Principal in the amount of $12,418,135.53;

    (b)    Interest in the amount of $2,979,195.87;

      (c)    Late Charges in the amount of $192,186.10;

      (d)    Make-Whole or yield maintenance premium in the amount of $2,210,522.80;

      (e)    Real estate taxes advanced by Lender and not reimbursed by Debtor in the amount of $1,038,893.13;

      (f)    Other fees and charges authorized by the Loan Document in the amount of $105,561.12; and

      (g)    Credit for funds held in suspense in the amount of $176,031.87

12.    The Pre-Petition Secured Debt is secured by a first priority, perfected lien and continuing security interest in, all of the property of the Debtors described in **Exhibit B** attached hereto and incorporated herein (the "**Property**"), including, but not limited to, the Real Estate and Other Collateral.

## IV. CASH COLLATERAL ORDERS

13.    On February 11, 2014 the Court entered a First Interim Order Authorizing Use of Cash Collateral (the "**First Interim Order**") authorizing use of cash collateral.

14.    On March 24, 2014, the Court entered its Second Interim Order Authorizing Use of Cash Collateral (the "**Second Interim Order**").

15.    On April 8, 2014, the Court entered the Third Interim Order Authorizing Use of Cash Collateral (the "**Third Interim Order**") authorizing the Debtors' use of Cash Collateral through and including May 31, 2014.

16.    On June 23, 2014, the Court entered the Fourth Interim Order authorizing use of Cash Collateral (the "**Forth Interim Order**") authorizing the Debtor's use of Cash Collateral through and including July 31, 2014.

17.    On September 18, 2014, the Court entered the Fifth Interim Order authorizing use of Cash Collateral (the "**Fifth Interim Order**") authorizing the Debtor's use of Cash Collateral through and including October 31, 2014.

18.    On November 4, 2014, the Court entered the Sixth Interim Order authorizing use of Cash Collateral (the "**Sixth Interim Order**") authorizing the Debtor's use of Cash Collateral through and including November 30, 2014.

19.    Under these orders, the Debtors were authorized and required to make adequate protection payments in the form of payments into escrow for accruing post-petition real estate taxes and insurance in accordance with the Mortgage. No adequate protection payments were made to Secured Lender on account of the Pre-Petition Secured Debt during the pendency of the Bankruptcy Cases.

20. The budgets attached to these orders all contemplate that the Debtors would enjoy and collect significant positive cash flow.

21. The First Interim Order, Second Interim Order, Third Interim Order, Forth Interim Order, Fifth Interim Order and Sixth Interim Order (collectively, the "**Cash Collateral Orders**") expressly stated, "This order is entered without prejudice to either party requesting additional relief during the course of the bankruptcy case."

22. According to the Debtors' most recent Monthly Operating Report for the period ending November 30, 2014, which report was filed on December 12, 2014 [Docket #193], the Debtors reported a cash balance of $857,217.49 as of November 30, 2014 (combined with any additional accruing post-petition revenues the "**Encumbered Surplus Revenues**")

23. The Encumbered Surplus Revenues constitute the Lender's Cash Collateral as they are derived from the Real Estate and the rents derived therefrom on which Secured Creditor has a first priority lien and security interest.

## V. THE COURT-APPROVED SETTLEMENT AGREEMENT

24. On October 1, 2014, the Debtors filed a Motion to Approve Settlement Agreement by and between Debtors and Secured Creditor [Docket #174] (the "**Settlement Motion**"). Pursuant to the Settlement Motion, the Debtors sought court approval of a DPO Letter Agreement, a copy of which was attached to the Settlement Motion as Exhibit 1 (the "**Settlement Agreement**"). Under the Settlement Agreement, the Debtors agreed to make a discounted pay off of Secured Creditor's claim on or before December 1, 2014 and Secured Creditor agreed to accept a significantly reduced pay off amount if paid on or before December 1, 2014.

25. On October 21, 2014, the Court entered an order approving the Settlement Agreement by and between the Debtors and Secured Creditor [Docket #181]. Pursuant to the Settlement Order, the Court approved the Settlement Agreement as attached to the Settlement Motion.

26. A true and accurate copy of the Settlement Agreement is attached hereto and incorporated herein as **Exhibit C**.

27. Under ¶11 of the Settlement Agreement, the Debtors failure to pay the Discounted Payoff Amount to the Lender on or before December 1, 2014 constituted a "Termination Event." Settlement Agreement § 11(b).

28. As set out in the Settlement Agreement, upon a Termination Event: "Borrower stipulates to relief from the automatic stay so that Lender shall be immediately entitled, without further notice to Borrower or Guarantors, to exercise all of its rights and remedies under this Agreement and the Loan Documents, in equity and at law, including, but not limited to, demanding immediate payment of the entire Indebtedness of the Loan and commencing or continuing, as applicable, and completing foreclosure proceedings…against Borrowers and the Property." Settlement Agreement, ¶11.

29. Paragraph 12 of the Settlement Agreement further provides, "Upon the occurrence of a Termination Event, Borrowers stipulate to relief from the automatic stay and Lender shall immediately be entitled, without further notice to Borrowers or Guarantor to exercise any and all of Lender's rights and remedies under this Agreement and the Loan Documents, in equity and at law (all of such rights and remedies being cumulative), including, but not limited to... commencing proceedings seeking the appointment of a receiver ("Receiver") for the Property and/or the other real and personal property securing the Loan (the "Other Collateral") ("Receivership Proceedings") and commencing or completing foreclosure proceedings against Borrowers, the Property and/or the other real and personal property securing the Loan ...."

30. Paragraph 12 of the Settlement Agreement further provides: "It is the express intent of Borrowers, Guarantor and Lender that, upon the occurrence of a Termination Event, Lender shall be able to acquire possession of and title to the Property and Other Collateral as the earliest possible date...."

## VI. SECURED CREDITOR IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

31. Case law regarding stipulations for relief from the automatic stay generally fall into two categories: (1) agreements entered post petition by a debtor in possession or trustee and (2) loan contracts/agreements entered prepetition. As set out below, courts generally enforce and recognize post-petition agreements by a debtor in possession, especially when such agreements have been approved by the Bankruptcy Court. The latter category, prepetition waivers is not directly applicable to the case at hand, however, the logic and reasoning behind such decisions also supports granting relief from the automatic stay in this matter.

32. There is no controversy regarding what happens when a debtor in possession breaches a post-petition, court-approved agreement that conditions the continuance of the automatic stay on the debtor's performance of certain obligations, such as making periodic payments or selling estate assets within a certain period of time. In numerous circumstances and situations, courts have found that the debtor's breach of such an agreement is cause to lift the automatic stay. See, e.g., *Prod. Credit A'ssn of the Midlands v. Weisler* (In re Wieseler), 934 F.2d 965, 967 (8th Cir. 1991) (finding that debtor's failure "to honor a settlement requiring them to pay their debts constitutes 'cause' for lifting the stay under § 362(d)(1)"); *CitiMortgage v. Borm* (In re Borm), 508 B.R. 104, 106-07 (B.A.P. 8th Cir. 2014) (holding that bankruptcy court abused its discretion when it refused to lift stay after debtor failed to make payments under confirmed plan) (relying upon Weiseler); *In re Sando*, 30 B.R. 474, 476 (E.D. Pa. 1983) (holding that automatic stay was lifted when debtor failed to make monthly payments required by court approved stipulation); *In re Lafayette Dial, Inc.*, 92 B.R. 798, 800 (Bankr. N.D. Ind. 1988) (holding that debtor's violation of agreed adequate protection order justified lifting automatic stay); *In re Wald*, 211 B.R. 359, 361 (Bankr. D.N.D. 1997) ("First, Agri Bank asserts 'cause' exists to lift the automatic stay based upon the above-described stipulation. The stipulation provides that Agri Bank may institute immediate foreclosure proceedings in the event of default. Under the terms of the stipulation, since the Walds defaulted on their payments to Agri Bank, Agri Bank should be allowed to commence foreclosure.").

33. The only circumstances in which a debtor's breach of such an agreement does not lead directly to a creditor's relief from stay are when: (1) the debtor did not enter the agreement voluntarily; (2) the agreement violates public policy; or (3) "other extenuating circumstances" exist. *In re Sando*, 30 B.R. at 476 (citing *United States v. Montgomery*, 620 F.2d 753 (10th Cir.1980)). *Accord Sellersville Sav. & Loan Ass'n v. Kelly*, 29 B.R. 1016, 1018 (E.D. Pa. 1983) ("Unless a stipulation has not been entered into voluntarily, or its terms violate public policy, or other extenuating circumstances exist, a court will enforce the clear terms of a stipulation of the parties previously approved by the court at the request of the parties."). Relief from a court-approved stipulation under these three exceptions is extremely rare and cannot be based upon a debtor's change of heart when unfortunate, but not unforeseeable, circumstances occur. "[H]aving once settled the dispute through the entry of an agreed order, a debtor is not permitted to change its mind and repudiate that agreement. Indeed, attempts to do so are frequently condemned in the strongest possible terms." *In re Lafayette Dial, Inc.*, 92 B.R. at 800 (citing See *In re Herrera*, 23 B.R. 796, 797 (9th Cir.B.A.P.1982)). Overall, public policy supports enforcing stipulated agreements in bankruptcy. *In re Excelsior Henderson Motorcycle Mfg. Co., Inc.*, 273 B.R. 920, 924 (Bankr. S.D. Fla. 2002) ("The enforcement of such agreements "furthers the public policy in favor of encouraging out of court restructuring and settlements.").

34. In this instance, the Debtors' stipulation and consent to relief from the automatic stay was entered as part of the Settlement Agreement approved by this Court on October 21, 2014 pursuant to Fed.R.Bankr.P. 9019. [Mot. to Approve Settlement Agreement By & Between Debtors & MSCI 2007-IQ16 Retail 9654, LLC at 15 ¶ 9 (Doc. # 174 Ex. 1, filed Oct. 1, 2014); Order Approving Settlement Agreement By & Between Debtors and MSCI 2007-IQ16 Retail 9654, LLC (Doc. # 181, entered October 21, 2014).] Prior to approving the Settlement Agreement, notice and an opportunity to be heard was provided to all interested parties. [Notice of Mot. to Approve Settlement Agreement By & Between Debtors & MSCI 2007-IQ16 Retail 9654, LLC (Doc. # 175 filed Oct. 1, 2014).] Thus, under prevailing law, Debtors' stipulation and consent to relief from the automatic stay set forth in the Settlement Agreement should be enforced, and the automatic stay lifted, because this Court approved the Settlement Agreement following adequate and appropriate notice to all interested parties. While the Debtors' failure to consummate the sale of their assets and make the required discounted payoff under the terms of the Settlement Agreement is unfortunate, these circumstances are not grounds to unwind the Settlement Agreement or to relieve the Debtors and other interested parties from the Court-approved Settlement to which the Debtors specifically and voluntarily agreed and to which no party objected.

35. Though not directly on point, case law relating to prepetion waivers of the automatic stay also supports relief in the present circumstances. Several courts have enforced a prepetition waiver of the automatic stay in certain circumstances, or at least considered the prepetition waiver as a factor relevant to stay relief under 11 U.S.C. § 362(d). *In re Coastal Broad. Sys., Inc.*, No. CIV. 12-5682 RMB, 2013 WL 3285936, at *5 (D.N.J. June 28, 2013) (listing cases) aff'd, 570 F. App'x 188 (3d Cir. 2014). However, even courts which have concluded that prepetition waivers are per se unenforceable have not done so because they view all contracts relinquishing the automatic stay as problematic. Instead, these courts disapprove of prepetition waivers specifically because prepetition waivers differ from post petition waivers in terms of notice and an opportunity for other parties' interests to be considered. The seminal case in this regard is *In re Pease*, 195 B.R. 431 (Bankr. D. Neb. 1996). In *In re Pease*, the court

7

explained, at length, that a prepetition borrower does not represent the interests of its creditors and, as a result, does not have the capacity to waive the automatic stay. Id. at 433. Post petition, however, a debtor in possession as a fiduciary does represent its creditors' interests and does have the capacity to waive the automatic stay: "A debtor may not waive the automatic stay of 11 U.S.C. § 362 until after the bankruptcy case is commenced and the debtor is acting in the capacity as debtor in possession." Id. The court in *Pease* concluded that a debtor in possession's post petition waiver of the automatic stay is enforceable with "court approval after notice and an opportunity to object is provided to all parties in interest." Id. (citing Fed.R.Bankr.P. 4001(d)).

36.  *Pease* has been widely cited, including by a court in this district that, in 2011, adopted *Pease's* prepetition/post petition dichotomy. "[T]he Court agrees with the Court in *Pease* that the waivers, unless they were part of a previous bankruptcy proceeding—for example, part of a confirmed plan or stipulation resolving an earlier motion for relief-appear to conflict with the policies and purposes of the Bankruptcy Code, and should not be enforced." *In re DB Cap. Holdings, LLC*, 454 B.R. 804, 816 (Bankr. D. Colo. 2011).

37.  The present proceeding presents exactly the type of stay relief waiver described as acceptable and enforceable by the courts in *DB Capital Holdings, LLC* and *Pease*: the Debtors' stipulation and consent to relief from the automatic stay post petition in their capacities as debtors in possession and fiduciaries, as part of a post-petition settlement agreement approved by this Court under Fed.R.Bankr.P. 9019 after notice, and an opportunity to object, was provided to all interested parties. As such, the Settlement Agreement is not a prepetition agreement subject to additional scrutiny under *Pease*. Instead, it is a "a stipulation freely entered into by the parties [and] is binding on the parties. In the context of stay litigation, such stipulation operates as a binding waiver by the debtor of any right to obtain protection from the Court against proceedings instituted by a secured party for the purpose of enforcing its security interest." *In re Excelsior Henderson Motorcycle Mfg. Co., Inc.*, 273 B.R. at 924 (quoting entirely In re B.O.S.S. Partners I, 37 B.R. 348, 350-51 (Bankr.M.D.Fla.1984)). Thus, the Court should grant immediate relief from the automatic stay in accordance with the approved Settlement Agreement.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Secured Creditor respectfully requests that the Court:

(a) grant Secured Creditor's Motion for Relief from the Automatic Stay;

(b) grant Secured Creditor immediate relief from the automatic stay to:

(i) pursue any and all applicable rights and remedies which it has with respect to the Debtors' Real Estate and Other Collateral including, without limitation, to continue the Enforcement Action to: (A) seek and obtain the appointment of a receiver with respect to the Real Estate with the power to collect rents and proceeds, and to take all and such other actions as available to the Secured Creditor under applicable non-bankruptcy law, (B) commence and/or continue a foreclosure sale of the Real Estate and Other Collateral, and (C) take such other action available to Secured Creditor with respect to the Real Estate and Other Collateral as set out in the Mortgage and other loan documents; and

(ii) collect and obtain from the Debtors the Encumbered Surplus Revenues;

(c) pursuant to B.R. 4001(a)(3), enter an order granting relief from the automatic stay which will be effective immediately upon entry of such order, without imposing any further 14-day stay; and

(d) order such other remedies and relief as the Court deems reasonable and necessary.

Respectfully submitted this 5th day of January, 2015.

MARKUS WILLIAMS
YOUNG & ZIMMERMANN LLC

s/ James T. Markus
James T. Markus, #25065
Jeffery O. McAnallen, #11389
1700 Lincoln Street, Suite 4550
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
jmcanallen@markuswilliams.com

**Counsel for MSCI 2007-IQ16 Retail 9654, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2015, I caused a true and correct copy of the foregoing **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** was served via U.S. Mail postage prepaid to the following:

Prospect Square 07 A, LLC
Prospect Square 07 B, LLC
Prospect Square 07 C, LLC
Prospect Square 07 D, LLC
Prospect Square 07 E, LLC
5690 DTC Boulevard, Suite 515
Greenwood Village, CO 80111
*Debtors*

Elizabeth Gold
5690 DTC Boulevard, Suite 515
Greenwood Village, CO 80111
*General Counsel for Debtors*

/s/ Jenny F. Tokuoka
Jenny F. Tokuoka

I hereby certify that on this 5th day of January, 2015, I caused a true and correct copy of the foregoing **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** was served via U.S. Mail postage prepaid and the Court's CM/ECF electronic filing system to the following:

Daniel J. Morse
308 W. 21st St., Ste. 203
Cheyenne, WY 82001
*Attorney for the US Trustee*

Lee M. Kutner
Jenny M.F. Fujii
Leigh Flanagan
1660 Lincoln Street, Suite 1850
Denver, CO 80246
*Attorneys for Debtors*

Robert Graham
360 South Garfield Street, 6th Floor
Denver, CO 80209
*Attorney for Gary Dragul*

U.S. Trustee
999 18th Street, Suite 1551
Denver, CO 80202

/s/ Jenny F. Tokuoka
Jenny F. Tokuoka